# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **MELANIE HIBBITTS, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:09CV00073 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **BUCHANAN COUNTY SCHOOL** | ) | By: James P. Jones |
| **BOARD, ET AL.,** | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

*John P. Fishwick, Jr., and Moncia L. Mroz, Lichtenstein Fishwick, P.L.C. Roanoke, Virginia, for Plaintiffs; W. Bradford Stallard, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

In this employment dispute between a local school board and three public school administrators, in which suit was filed by the administrators under 42 U.S.C. § 1983 (West 2003), I will grant summary judgment to the defendants.[1]

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when a matter presents no genuine issues of material fact. *Anderson v.*

---

[1] The defendants have also moved to dismiss, in part on the ground that the suit against the board members in their individual capacities is unjustified and because suing the board members in their official capacities is duplicative of suit against the board itself. While their arguments have considerable force, it is unnecessary for me to decide them.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering whether genuine factual questions exist, a court must assess the record and all inferences drawn from the evidence in the light most favorable to the non-moving party. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The plaintiffs, Melanie Hibbitts, Lynn Lowe, and Ruby Coffey, work as administrators at Riverview Elementary/Middle School in Buchanan County.[2] The plaintiffs have obtained continuing contract status, which means that under Virginia law they may not be terminated without cause and certain procedural safeguards. *See* Va. Code Ann. § 22.1-294 (2006).

This case arose after the Virginia Department of Education alleged that several Riverview students had received inappropriate assistance during the Virginia Grade Level Alternative Assessment("VGLA") tests. The State instructed the Buchanan County Division Superintendent, Tommy P. Justus, to create a plan that addressed how the school system would prevent these problems from reoccurring.

As part of his plan, Justus sought to place the plaintiffs on probation. Shortly before the 2009-2010 school year, Justus offered the plaintiffs contracts with provisions that each was a "probationary contract for a period of three years due to VGLA testing irregularities." (Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. D, E,

---

[2] Hibbitts is the principal and Lowe and Coffey are assistant principals.

F.) The tenured administrators refused to sign the contracts and requested a hearing. Justus responded by offering the administrators a second contract. Under this contract, the plaintiffs would not be on probation, but they would be transferred to other schools.

Instead of signing either contract, the plaintiffs instituted the present suit against Justus, the Buchanan County School Board, and the individual board members. The Complaint alleged that the defendants had violated the plaintiffs' property and liberty interests by not affording them the due process demanded by the Fourteenth Amendment. Despite their refusal to sign contracts, the administrators continued to work, and be paid, under the terms of their 2008-2009 contracts.

The defendants moved to dismiss the Complaint. After the parties briefed and argued the motion, I concluded that the Complaint failed to state a claim for which relief could be granted. *Hibbitts v. Buchanan County Sch. Bd.*, 685 F. Supp. 2d 599, 602 (W.D. Va. 2010). The plaintiffs' protected property rights remained intact because they continued to work and receive their salaries. Because they had not been terminated, the plaintiffs could not claim a liberty violation.

The plaintiffs moved for reconsideration. I denied the motion, but permitted the plaintiffs to file an amended complaint. I urged the defendants to respond by filing a motion for summary judgment with all necessary supporting affidavits.

The plaintiffs then filed their present Amended Complaint, once again alleging that the defendants had violated their constitutionally protected property and liberty interests by offering the plaintiffs a probationary contract or reassignment.

One day after they had filed the Amended Complaint, the plaintiffs did in fact execute standard contracts for the remainder of the present 2009-2010 school year. The defendants then moved for summary judgment, arguing that the signed contracts made the plaintiffs' claims moot.

Thereafter, on April 13, 2010, Justus wrote the plaintiffs. In his letters to Lowe and Coffey, Riverview's assistant principals, the superintendent explained that because of planned budget cuts, Lowe and Coffey would be reassigned to teaching positions for the next school year. Justus also wrote Hibbitts, Riverview's principal, and informed her that she faced a similar demotion. In the letter to Hibbitts, Justus listed several reasons for the demotion.

One day before a hearing on the present motions, the plaintiffs filed a Motion to Amend the Amended Complaint. The newly proposed pleading adds the allegation that the demotions announced in Justus' letter constituted unconstitutional retaliation. The plaintiffs also allege that the demotions violated their due process rights because Justus' letters did not meet the requirements of section 22.1-294(C) of the Virginia

Code. That statute, the plaintiffs argue, requires notice directly from the school board, and not from the division superintendent.

The defendants' Motion to Dismiss and Motion for Summary Judgment have been briefed and argued, along with the plaintiffs' Motion to Amend. The plaintiffs have also moved to strike the defendants' response to the plaintiffs' reply brief in support of the Motion to Amend and have moved the court to refer the case for mediation and to schedule a trial date.

II

When a public employee alleges a Fourteenth Amendment due process violation in a suit under § 1983, the plaintiff must show that a State actor's conduct deprived the employee of a constitutionally protected property or liberty interest. Public employees have a constitutionally protected property interest when State law guarantees that employment may not be terminated without cause or certain procedural safeguards. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 546 (1985); *Wooten v. Clifton Forge Sch. Bd.*, 655 F.2d 552, 554 (4th Cir. 1981).

A Virginia public school administrator has a protected property right in her employment once she obtains continuing contract status. *Wooten*, 655 F.2d at 554–55; *Echtenkamp v. Loudon County Pub. Sch.*, 263 F. Supp. 2d 1043, 1054 (E.D.

Va. 2003.) Once an administrator obtains continuing contract status she may not be fired without cause. But under State law, an administrator may be transferred to another school or demoted to a teaching position without cause. Va. Code Ann. §§ 22.1-294, -297 (2006); *Wooten*, 655 F.2d at 554–55.

Although Virginia law thus guarantees public school administrators tenure and certain procedural safeguards, the Constitution offers a more limited form of protection.

The Fourteenth Amendment's due process right to property does not include the right to a particular title or job, nor does it encompass the right to "perform particular services." *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990). The right is not infringed upon if an administrator faces mere threats of termination while receiving full payment of her salary. *Echtenkamp*, 263 F. Supp. 2d at 1053-54*; see also Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1141 (4th Cir. 1990). And, there is no deprivation if an administrator continues to receive a paycheck while suspended or placed on probation. *Earley v. Marion*, 540 F. Supp. 2d 580, 688 (W.D. Va. 2008), *aff'd*, 340 F. App'x 169 (2009) (unpublished); *Scruggs v. Keen*, 900 F. Supp. 821, 825–26 (W.D. Va. 1995).

Before a court can consider allegations of a liberty infringement under the Fourteenth Amendment, a public employee must demonstrate that she was terminated.

*See Paul v. Davis,* 424 U.S. 693, 701 (1976)*; Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990). If a public school administrator remains employed, it is irrelevant whether public statements were made about the employee. *Id.*

The law is also clear when it comes to a public employee's right to procedural due process under the Fourteenth Amendment. A due process analysis is only permitted when a plaintiff can demonstrate deprivation of property or liberty interests by a State actor. "Unless there has been a 'deprivation' by 'State action,' the question of what process" is required or adequate "is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Stone v. University of Md. Med. Sys.*, 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted). Thus, a court can consider the question of constitutionally protected procedural rights only when a plaintiff demonstrates State interference with a property or liberty interest.

A tenured Virginia school administrator is entitled to certain procedural guarantees. But these State-created procedures do not equal a constitutionally guaranteed right to an exact adherence to the rules. The Fourteenth Amendment "'does not require a local school board to adhere to its own guidelines as long as minimum due process is accorded.'" *Echtenkamp*, 263 F. Supp. 2d at 1055 (quoting *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 226–27 (4th Cir. 1984.)). Instead, the minimum process required by the Constitution is notice and a hearing before

termination. *Loudermill*, 470 U.S. 532, 542, 546. An employee's right to a pre-termination hearing vests when an employer announces, orally or in writing, its decision to terminate the employee. *Id*; *Bowers v.Rector & Visitors of the Univ. of Va.*, 478 F. Supp. 2d 874, 888 (W.D. Va. 2007).

Thus, State law may guarantee a public employee certain rights and procedural safeguards, but these rights do not automatically translate into guaranteed entitlements under the Fourteenth Amendment to the Constitution.

III

A proper summary judgment analysis requires that I consider the entire record before me. Accordingly, I have evaluated the facts and allegations raised in the proposed amendment to the Amended Complaint as well as the factual assertions made in the numerous affidavits and exhibits filed with the parties' motions.

I will grant summary judgment in favor of the defendants because no genuine issues of material fact exist as to whether the plaintiffs suffered a violation of their protected property or liberty interests. As set forth in my prior ruling in this case, the plaintiffs have not suffered a deprivation of a protected property interest because they have not had an interruption in their position, pay, or benefits. Despite plaintiffs'

repeated assertions, the record is devoid of any evidence showing that they were actually terminated or placed on probation.

The plaintiffs were initially offered a "probationary contract for a period of three years. . . ." (Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. D, E, F.) But the plaintiffs never executed this contract. Nor did the plaintiffs execute the next-offered reassignment contract. Instead, the plaintiffs sued and continued working, and receiving paychecks, under the terms of their 2008-2009 contracts.

The plaintiffs have repeatedly alleged that they suffered a "temporary" deprivation of their protected property rights. (Pls.' Br. in Opp'n 8.) This misguided assertion stems, in part, from statements made by the defendants. In letters to the plaintiffs' counsel, the defendants' attorney stated the administrators had "no job to leave" because they failed to execute a contract by a specific deadline. (Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. 19.) And, defense counsel repeatedly stated that the administrators had "voluntarily refused the offer of employment" by not executing the contracts within the deadline. (*Id*. at Ex. 16, 19.)

The plaintiffs insist these statements indicate they were terminated. The record proves otherwise. Throughout this contract dispute, the plaintiffs have continuously worked in their jobs. They have retained their positions, their titles, and, most

importantly, their salaries. There was absolutely no State interference with the plaintiffs' right to a continuing contract.

The plaintiffs argue their due process property rights were violated when Justus told the administrators they had two weeks in which they could execute a contract for the remainder of the 2009-2010 school year. Unlike earlier versions, this contract did not contain special or non-standard terms. Justus stated that if the administrators refused to execute the contract, as they had in the past, their refusal would "be deemed a refusal of continued employment. . . ." (Pls.' Mot. to Amend, Ex. D.)

Contrary to the plaintiffs' assertions, this does not constitute State interference with a constitutionally protected property right. The plaintiffs were not dismissed. They were not threatened with termination. Nor did they suffer a disruption in pay. Rather, the defendants informed the plaintiffs they had to execute their continuing contract by a certain date. That constitutes an offer. The plaintiffs were free to accept or reject it.

Finally, the recent demotions to teaching positions for the next school year do not violate the plaintiffs' protected property interests. Virginia law specifically allows a tenured administrator to be reassigned to a teaching position with a salary reduction as long as the administrator receives written notice and the opportunity to have an informal meeting before the demotion. Va. Code Ann. § 22.1-294(C), (D);

*Wooten*, 655 F.2d at 555. The plaintiffs received such notice and had an opportunity to meet with the school board. The validity of the reasons for the demotions are irrelevant because the law specifically permits for reassignment to a teaching position without cause. Va. Code Ann. § 22.1-294(D); *Wooten*, 655 F.2d at 555.

Because the plaintiffs were not terminated, they did not suffer a deprivation of their liberty interests. As the Fourth Circuit clearly articulated in *Johnson*, public statements cannot sully an individual's future career opportunities if they remain employed. 903 F.2d at 999–1000. The plaintiffs argue that the defendants job opportunities, "injuring the Plaintiffs' employability and promotability in the future, and their resulting income." (Pls.' Br. in Opp'n 3.) That may be true. But for purposes of a constitutional analysis, without termination, predictions about future career problems do not constitute deprivation of a protected liberty interest.

In the Amended Complaint and its proposed amendment, the plaintiffs assert that the defendants deprived them of their State law procedural rights. Specifically, the plaintiffs allege that Virginia law guaranteed them written notice and a hearing when the defendants initially offered the probationary and reassignment contracts. The plaintiffs also argue that Justus' March letter, in which he gave the plaintiffs a deadline to execute a contract, violated their right to a hearing "within fifteen days of receiving a notice of dismissal." (Pls.' Mot. to Amend 9, ¶ 36.) In addition, the

plaintiffs allege the April demotion letter violated their procedural rights, because the school board, not Justus, was supposed to provide the written notice.

I disagree with the plaintiffs' interpretation of the Virginia Code. But an analysis of Virginia law is unnecessary to reach the determination that the plaintiffs have not suffered a procedural due process violation under the Constitution. To conduct a procedural due process analysis under the Fourteenth Amendment the plaintiffs must have suffered a due process deprivation. The record demonstrates no such deprivation.

In cases where plaintiffs suffered State interference with a protected property right a court may then consider whether due process was afforded. Although Virginia offers the plaintiffs certain procedural guarantees, the only process guaranteed by the Constitution is notice and a hearing before termination or deprivation of the protected property right. *Loudermill*, 470 U.S. at 542, 546. Here, the plaintiffs received written notice informing them of their demotions and they were given the opportunity for a meeting prior to the demotion. For a constitutional due process analysis, it is irrelevant whether the procedure outlined under Virginia was strictly adhered to. *Echtenkamp*, 263 F. Supp. 2d at 1055. The educators received written notice and an opportunity for a hearing, which are the only requirements mandated by the Fourteenth Amendment.

IV

Under Rule 15 of the Federal Rules of Civil Procedure, a party may seek leave to amend a complaint. A court should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), unless it appears "that successive amendments are futile, offered in bad faith, prejudicial, or otherwise contrary to the interests of justice to justify denials of leave to amend." *Ward Elecs. Serv. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987).

The plaintiffs seek to include additional allegations as to why the defendants had violated their property and liberty rights. In addition, the plaintiffs wish to amend their complaint to include a retaliation claim.

This motion must be denied, however, because the proposed amendments are futile and they do not present any viable claims.

As discussed in section III above, the plaintiffs' Fourteenth Amendment allegations fail because they cannot demonstrate that the defendants interfered with their constitutionally protected interest in property or liberty. My analysis considered the circumstances that occurred in March and April and I reached the same conclusion as in my earlier ruling — the plaintiffs have not suffered a Fourteenth Amendment violation.

Permitting the plaintiffs to amend their Amended Complaint would be also futile because the plaintiffs do not have a valid First Amendment retaliation claim.³

The Fourth Circuit's framework for a First Amendment retaliation claim places a heavy burden upon a plaintiff. First, the public employee must demonstrate that the expressions or speech that provoked the alleged retaliation involved a matter of public concern. *Campbell v. Galloway*, 483 F.3d 258, 266 (4th Cir. 2007). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction. . . ." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If the speech does involve a matter of public concern, a court must then evaluate whether the employee's First Amendment rights outweigh the public employer's interest in the "'appropriate operation of the workplace.'" *Campbell*, 483 F.3d at 266. (quoting *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2006) (en banc)); *Garcetti*, 547 U.S. at 418.

The Fourth Circuit has repeatedly held that a "public employee's expression of grievances concerning his own employment is not a matter of public concern." *Huang*, 902 F.2d at 1140; *Campbell*, 483 F.3d at 267. This limitation includes

---

³ The proposed Amended Complaint does not state which constitutional rights were violated by the defendant's alleged retaliation. The pleadings indicate that the plaintiffs believe they faced retaliation due to the present lawsuit. Thus, I will conduct my analysis under a First Amendment framework because the right to petition the government, or access the courts, is analyzed under the same framework as the right to free speech.

lawsuits against employers that center upon disputes about a public employee's job. *See Baker v. Mecklenburg County*, No. 94–1508, 1995 WL 86436 (4th Cir. Mar. 3, 1995) (unpublished).

Here, the plaintiffs filed a lawsuit because of a dispute involving the negotiation and terms of their employment contracts. The present litigation unequivocally involves a matter of private concern. Because of this, the retaliation claim would fail as a matter of law if included in an amended complaint.

The plaintiffs urge me to analyze their proposed retaliation claim under the framework used in *Suarez Corp. Industries v. McGraw*, 202 F.3d 676 (4th Cir. 2000), and *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006). But those cases are inapplicable. In both *Suarez* and *Ehrlich* it was undisputed that the plaintiffs had engaged in conduct protected by the First Amendment. Here, that is the precise issue under consideration. An analysis of the issue results in the conclusion that unlike *Suarez* and *Ehrlich*, the First Amendment does not protect the plaintiffs' conduct.

The plaintiffs also want me to consider *O'Bannon v. Chicago Board of Education*, No. 00 C 7547, 2001 WL 1338996 (N.D. Ill. Oct. 30, 2001). The plaintiffs argue that I should reach the same conclusion as the Illinois district court because this proceeding and *O'Bannon* share similar facts. But I cannot consider that

case because I am bound by Fourth Circuit precedent, which clearly holds that employment disputes are not matters of public concern.

V

Throughout this litigation the plaintiffs have repeatedly asserted that the defendants' actions violated procedural safeguards offered by the Virginia Code. But these allegations do not present valid constitutional claims. For the foregoing reasons, I will grant the Motion for Summary Judgment and enter judgment for the defendants. A separate judgment will be entered herewith.[4]

DATED: June 23, 2010

/s/ JAMES P. JONES
Chief United States District Judge

---

[4] The Motion to Amend will be denied for the reasons stated, along with the plaintiffs' motion to refer to mediation and to fix a trial date. While the defendants did not obtain leave to file a Reply Memorandum in connection with the Motion to Amend, as required by Local Rule 11(c)(1), because the plaintiffs' reply brief contained new evidentiary material relevant to the issues, I will allow the Reply Memorandum and deny the Motion to Strike.